## Baker et al. v. Johnson.

(Decided March 6, 1934.)

JESSE MORGAN for appellants.

HUNT & BUSH and J. W. HOWARD for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

The sole question for determination in this case is one of fact. On March 25, 1924, W. E. Johnson and Clare Johnson, husband and wife, and Kate F. Johnson, the mother of W. E. Johnson, executed and delivered three notes payable to Floyd H. Baker and the heirs of John Baker, one for $500, payable 12 months after date and two for $1,000 each payable 24 and 36 months thereafter, as the consideration for lots Nos. 44, 45, and 46, in the "Floyd H. Baker Addition to Hazard, Kentucky." A deed was executed and delivered by Floyd H. Baker to Clare Johnson, conveying them to her. This action was brought to collect the notes.

As a defense to the notes, Kate F. Johnson pleaded that, at the time she signed them, she was a married woman under the disability of coverture, and Clare Johnson purchased and accepted deed to the lots, and she (Kate F. Johnson) received no part of the consideration for which the notes were executed. It does not appear on the face of the notes that she merely signed them as surety. The fact she signed them as surety may be shown by evidence aliunde; the burden resting upon her to establish it. Smith v. First National Bank, 243 Ky. 716, 49 S. W. (2d) 538. The question whether she signed them as surety or principal is determinable solely by the evidence.

B. W. Baker narrates his and his coplaintiffs' views thus:

"We sold the property to her and to Clare Johnson and W. E. Johnson and she requested that we deed it to Clare Johnson."

Elsewhere he was inquired of "if he sold the property to the three of them." His response was: "Yes, Sir," and at the "request of the three," the deed was made to Clare Johnson. He further testified that he was at the home of his mother when the trade started in the presence of Floyd H. Baker and his mother, when "Mrs. Johnson made the trade"; but neither W. E. Johnson nor Clare Johnson was present. The deed was not signed or acknowledged at that time. He claims, after the deed was made, Mrs. Johnson cultivated the lots as a garden and rented them to others, living at the time on the adjoining lot. Mrs. Fuson, a sister of B. W. Baker, discloses her knowledge in this language:

"Well Mrs. Johnson was down here at church, and she lived in Lexington, was down here at the Baptist Church, and I asked her up to my house to eat dinner and when she came she was telling me about Mr. Johnson being sick and that she wanted to move back to Hazard and said that there was just one thing keeping her away from Hazard and that was her daughter that was not married; but she said I have to come back, I have to move back, and on this trip I want to see Floyd and look over some property in Big Bottom. And I said well I will call Floyd now if you want me to, and I stepped to my back door and saw Floyd going into my mother's door and I called to him to come down Mrs. John-

son wanted to see him on business and he came. They went in my living room and talked. I heard a part of the conversation and part of it I did not hear because I was busy with my dinner, but she said I want to go with you on this trip and she said to see these lots and he said I am ready this afternoon Mrs. Johnson, if you are and they made the date and after we had finished dinner Mrs. Johnson said, you go with us, and I said I cannot go but will call mother and she can go and I called mother and she went and Mrs. Johnson and Floyd and mother left my house going to look at the lots. They were gone for about a couple of hours and Mrs. Johnson had forgotten her gloves at my house on the hill and she came back up the hill with mother and she was awfully pleased and tickled and I said what did you do and she said I selected two lots one for Howard and one for Bill. And I can pay for these myself. And I am going to try to make Johnson buy two more lots for Sadie or some other of the girls might want to move back here and all the choice lots of Hazard will be taken by that time. Later on after Mrs. Johnson built this house on Howard's lot I don't know whose, her's or Howard's one, I walked up there to look it over and was talking to her telling her what a beautiful home she had and I said is Bill going to build now, and she said no we cannot build them a home right now, they want too expensive a home and we are not able just now to build as fine a home as they want. Later on at another time I was passing through the alley there and Mrs. Johnson was sitting on her back steps and she looked tired and looked like she had been digging and she said she had been working—had been working in her garden, and I looked around to see her garden she was talking about and she says I don't have a garden here I am tending Bill's lots up yonder.''

The purchasing of the lots, the execution and delivery of the deed and the notes, and the participation in the transaction of Mrs. Kate F. Johnson are detailed by W. E. Johnson thuswise:

"Well, I met Floyd down the street and asked him about purchasing a lot in what is called the Big Bottom Addition, which was owned then by Floyd Baker and the heirs of John Baker. He asked me

which lot I wanted, that he had several up there, and I told him the one I wanted and asked the price of it. He told me the purchase price would be Twenty-five Hundred [$2,500.00] Dollars. I said 'that is right high,' and he said 'No, that is about the price I am getting for all the rest of them and I think you ought to take it.' I said 'Well I haven't got any $2,500.00 right now.' He said, 'Well, I'll take your note for it.' So, I told him at that time I wanted a deed to be made to my wife, Clare B. Johnson, in the event that I purchased it. He said, 'Well, we can do that.' I said 'What about the money on it, Floyd?' He said, 'You needn't worry about that. You can pay me some time when you are in a position to.' I said, 'What about interest on this note?' Floyd said 'Don't worry about that. There won't be anything to it, because you won't have to pay me interest.' Under those circumstances, I told Floyd to write a deed. This deed was to be made to Clare B. Johnson. Floyd come down to our office with the notes, handed them to me and said, 'You have your wife sign this note. Also you sign it and get your mother to go as security.' We then executed the notes as they stand. Well, Floyd brought the notes up and I had spoken to father about it and asked him what he thought about it and he said that was an awful price to pay for a lot, and that was about all he said. When Floyd Baker came into the office with the notes, mother was there, and I had these notes, and Floyd said he would take her as surety on them. She objected a little bit to signing them. I persuaded, telling her that I could pay so much per month and have a lot and eventually could build a home on it. We had a rather lengthy conversation on it. Then finally mother signed it. She said, 'Well, I had rather not sign this note.' I told her it was just a matter of security and that she was not at all implicated in it or wouldn't be and that I could pay the note off. I thought at that time that I could.''

"Q. At the time of the sale and purchase of the lot spoken of by you, for which the notes were executed, did K. F. Johnson have or ever have any interest, direct or indirect in the lots? A. Absolutely not.

"Q. At the time Mrs. K. F. Johnson signed

the notes as surety, was she a single or married woman? A. Married."

To corroborate the testimony of B. W. Baker and Mrs. Fusom, the Bakers introduced J. A. Powell who claims he was conducting a Coca-Cola plant on the day the deed and notes were delivered at the plant, and that Johnsons were not in charge of, and at, the plant on that date. The Johnsons declare Howard Johnson and wife, and W. E. Johnson and wife, were living in the same building at which the Coca-Cola plant was operated, and were in charge of and at the plant, with K. F. Johnson, on the day the notes were actually signed and delivered and the trade completed.

Floyd H. Baker, who prepared the deed and the notes, delivered the former, and, after the notes were signed by the Johnsons, accepted same, does not testify. Neither Mrs. Baker nor Mrs. Fusom claim they were present when the deed was delivered, the notes signed by Johnsons, and accepted by Floyd H. Baker. They do not contradict any statement of the Johnsons, as to what occurred at the time Mrs. Johnson signed the notes, and W. E. Johnson delivered them to Floyd H. Baker. The trial court accepted the testimony of the Johnsons as the correct version of the transactions, showing Mrs. Johnson signed the notes as surety. Reviewing the evidence for ourselves, we are convinced the evidence is plenteous to support the findings of the chancellor.

The Bakers pleaded and endeavored to prove as an estoppel by alleging and proving Kate F. Johnson selected the lots and "by her words, acts and conduct" led them to believe she desired to purchase them and did purchase same, and directed the deed to Clare Johnson be executed; and thereafter took possession and control of the lots.

No elements of estoppel are embraced by the pleading presenting the same, nor established by evidence to sustain its allegations. The transaction detailed by the witnesses of the Bakers does not in fact conflict with that of the witnesses of the Johnsons. Both transactions doubtless occurred as described by the witnesses of the parties. Floyd Baker, who was not introduced as a witness, was present at the completion of the deal. With his testimony absent, there is no reason for doubting that of the Johnsons.

Perceiving no error, the judgment is affirmed.